UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| DIRECTORY ASSISTANTS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:11:cv-480 |
| v. | : | |
| | : | |
| SUPERMEDIA, LLC, ALEJANDRO CARO, | : | |
| STEVEN SAPAUGH, and SCOTT E. DUFFY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DIRECTORY ASSISTANTS, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Directory Assistants, Inc. ("DAI") sued the Defendants SuperMedia, LLC ("SuperMedia"), Alejandro Caro ("Caro"), Steven Sapaugh ("Sapaugh"), and Scott E. Duffy ("Duffy") (collectively, "Defendants") for defamation and tortious interference with business expectancy based on the Defendants' publication of several defamatory statements to DAI's prospective customers in Virginia. The Defendants moved to dismiss the entire complaint claiming that the federal Communications Decency Act ("CDA") bars DAI's claims and that DAI failed to sufficiently plead its common law claims.[1] DAI's claims, however, are not limited to statements to which the CDA could apply. And, whether the CDA applies to these circumstances is a fact-intensive inquiry that requires discovery. The Complaint more than adequately alleges the Defendants' tortious conduct. The motion to dismiss should be denied.

---

[1] Defendants also initially sought dismissal for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based on DAI's failure to allege the citizenship of all of the members of SuperMedia, LLC. With the consent of Defendants' counsel, DAI filed a motion for leave to file an amended complaint (Doc. No. 8) to correct the alleged jurisdictional pleading deficiency. Based on this correction, the Defendants orally agreed to withdraw that portion of their Motion to Dismiss contesting jurisdiction. Accordingly, DAI does not address that argument and treats Defendants' motion to dismiss purely as a 12(b)(6) motion.

## RELEVANT FACTUAL ALLEGATIONS

DAI is an advertising consulting agency that helps businesses efficiently and economically advertise in yellow page directories. (Compl. ¶ 8.) DAI has been in business for over twenty years and has provided its valuable knowledge and services to thousands of small and large businesses in numerous industries in virtually every state across the country, including Virginia. (*Id.* ¶¶ 9, 36.) DAI is compensated based on how much a customer saves on its yellow page advertising after applying DAI's strategies and recommendations. (*Id.* ¶ 10.) DAI's business therefore directly competes with companies that publish yellow page directories and/or place advertising in those directories for a fee. (*Id.*)

The defendant SuperMedia, LLC sells yellow page advertising and/or publishes yellow page directories in Virginia. (*Id.* ¶ 12.) The defendants Caro and Duffy are or were sales representatives for SuperMedia. (*Id.* ¶¶ 12-13.) The defendant Sapaugh is or was a sales manager for SuperMedia. (*Id.* ¶ 14.) The Defendants earn money based on the fees that businesses pay to advertise in SuperMedia's yellow page directories. (*Id.* ¶ 15.) The Defendants therefore directly compete with DAI.

On or about April 29, 2011, Caro compiled links to false and defamatory website postings concerning DAI in an email to Sapaugh, who is presumably Caro's boss. (Compl. ¶ 31.) A copy of this email and the subsequent email chain which is referred to as the "SuperMedia Email" is attached as **Exhibit A**.[2] Caro's email included links to defamatory postings about DAI on the websites www.ripoffreport.com (the "RipOffReport Posts") and www.scaminformer.com (the "Scam Informer Post"). (Ex. A.) The subject line of this email

---

[2] In deciding a Rule 12(b)(6) motion, a court may consider a document that is referenced in the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Berry v. Gutierrez*, 587 F.Supp.2d 717, 723 (E.D. Va. 2008) (noting that "[a] court can . . . take into consideration at the 12(b)(6) stage documents attached to a motion to dismiss, as long as they are integral to the complaint and authentic.")

read: "Info About Cutter – Please forward." (Ex. A; Compl. ¶ 31.)  In the email, Caro wrote to

Sapaugh:

> Heads up everyone, the cutter contacted my client Ingram Auto Parts. Her first question when we spoke was "how much can I save by getting rid of the color in my ad?" She was reluctant but gave me the name of the company. Here is what I have found on them. Just make sure you tell your clients' to contact you right away if they get the call (thanks Steve). Hopefully we can save some people from making mistakes on their programs.
>
> The company is called Directory Assistants, Inc. Below are links to their website and several scam and legal reports.

(Ex. A.)  The links that Caro included in his email direct the recipient to posts that include such

defamatory statements as:

- Directory Assistants Inc. "Michael Cody" "A Yellowpage Consultant Scam Artist" They provide no real service at very high cost and court cases. Glastonbury Connecticut; (Compl. ¶ 19.)

- Business to business scam that can cost $$$Thousands. They give no real advice and will not help negotiate with AT&T Reps like they said they would; (Compl. ¶ 19.)

- They promised to help save money with AT&T Yellow Pages. There advice consisted of reducing our ads on AT&T Yellow Pages (which we were planning on doing anyway). They claimed they could get the same ad cheaper (They couldn't). If I promised to save you money on groceries and looked at your bill then said eat only bread you would save money too; (Compl. ¶ 19.)

- David Ford – Michael Cody – Carl Staggers – Alison Babel – Peggy Ahern Directory Assistants Inc. – Directory Assistants Inc "Yellowpage Consultant Scam Artists" They provide no real service at very high cost and court cases.  Glastonbury Connecticut Glastonbury, Connecticut; (Compl. ¶ 20.)

- Do not sign a contract with this company.  Once you sign the contract you are not a customer, but a victim of their contract.  They won't help you lower your ad costs.  They will only tell you to reduce the size of your ad and when you do or make any changes at all they will charge you exhorbitant [sic] and outrageous fees.  Dan C. is the good cop.  He looks nice and is professional.  Once they get you to sign, then you will be dealing with David Ford who sounds like a mafia kingpin.  He will threaten to take you to court if you don't pay exhorbitant [sic] fees.  Their

contract if full of deceptive devices that work in their favor; (Compl. ¶ 22).

Sapaugh forwarded Caro's e-mail in its entirety to at least 12 SuperMedia employees, including Caro and Duffy. (Compl. ¶ 32.) Sapaugh wrote:

> Teams- we heard about these guys, they've been here before and all they do is hurt the client.
> we do anything the client wants and we don't charge for it- we sell on value , not fear!
> once the client signs with DA , DA collects for 2 or 3 years on the savings.
> don't let this happen, so review and be aware
> Steve

(*Id.*)

On May 10, 2011, Duffy forwarded the SuperMedia Email, including the RipOffReport Posts and the Scam Informer Post, to a prospective customer of DAI located in the Norfolk, Virginia area. (*Id.* ¶ 29.) After receiving this email from Duffy, that prospective customer refused to do business with DAI. (*Id.* ¶ 30.)

Upon information and belief, SuperMedia has provided and continues to provide the SuperMedia Email and/or the RipOffReport Posts and/or the Scam Informer Post and/or other defamatory information concerning DAI to DAI's potential customers. (*Id.* ¶ 34.)

## STANDARD OF REVIEW

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (citation omitted). When deciding a motion to dismiss, the court must accept all well-pled facts

as true and resolve all reasonable inferences in favor of the plaintiff. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). "[F]or the purposes of a Rule 12(b)(6) motion, the claimant meets its burden by setting forth one plausible inference among several." *E.I. du Pont de Nemours & Co v. Kolon Indus.*, 683 F. Supp. 2d 401, 415 n.10 (E.D. Va. 2009).

Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570; *accord. Iqbal*, 129 S. Ct. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "Even under the heightened pleading requirements, a complaint filed in federal court does not have to allege all the facts that could permit the plaintiff to obtain relief." *Trail v. General Dynamics Armament & Tech. Prods.*, 697 F. Supp. 2d 654, 657 (W.D. Va. 2010).

## LEGAL ARGUMENT

## I.   THE COMMUNICATIONS DECENCY ACT DOES NOT BAR DAI'S CLAIMS.

In broad terms, the Communications Decency Act of 1996 ("CDA") gives certain websites and users of those websites immunity from claims that seek to treat them as publishers or distributors of defamatory statements authored by someone else. *See* 47 U.S.C. § 230(c)(1); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997), *cert. den'd*, 524 U.S. 937 (1998). The Defendants contend that the CDA bars DAI's claims against them. This is a fact-intensive affirmative defense upon which the Defendants bear the burden of proof. This issue cannot be decided solely on the allegations in DAI's complaint. Moreover, DAI's claims are not limited to statements to which the CDA might apply. DAI's complaint and the inferences fairly drawn

therefrom include verbal statements and other written communications that could provide an independent basis for DAI's claims. The Defendants' motion should be denied.

### A.   Discovery Is Necessary To Determine Whether The CDA Applies.

CDA immunity is an affirmative defense and therefore not typically amenable to being decided on a Rule 12(b)(6) motion. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. Ill. 2003); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004); *Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 U.S. Dist. LEXIS 12479, *32-33 (S.D. W. Va. Feb. 19, 2008); *Doctor's Assocs., Inc. v. QIP Holders LLC*, No. 3:06-cv-1710 (JCH), 2007 U.S. Dist. LEXIS 28811, *6 (D. Conn. Apr. 18, 2007).[3] Whether the CDA applies to the particular conduct is a fact-intensive inquiry that requires discovery. *See Novak*, 309 F. Supp. 2d at 452; *Curran*, 2008 U.S. Dist. LEXIS 12470 at *32-33, *41; *Doctor's Assocs., Inc.*, 2007 U.S. Dist. LEXIS 28811 at *6.

Discovery is particularly necessary in this case. For example, the Defendants make the bald assertion that they are "users" of an "interactive computer service" and therefore entitled to CDA immunity. (Defs.' Memo at 8, 9.) The allegations of the Complaint alone do not show that RipOffReport or Scam Informer meet the definition of an "interactive computer service." The Defendants bear the burden of proving facts that show that these websites meet the statutory definition.

The Defendants also bear the burden to show that they were "users" of an "interactive computer service." This is another fact-dependent inquiry that also involves a legal determination of what constitutes a "user" for purposes of the CDA – something that the Defendants do not directly address. For example, discovery is necessary to determine whether Caro obtained the information from the websites himself or whether he received the information

---

[3] Copies of all unreported cases are attached as **Exhibit B**.

from someone else. If he did not "use" the websites, the CDA does not apply to him. What about the other defendants? Did they "use" the websites? Facts showing how the Defendants obtained the defamatory information and how they communicated it to third parties are necessary to determine whether the CDA applies to particular actions. The Defendants' motion to dismiss should be denied and DAI should be permitted to take discovery on these issues. *See Novak*, 309 F. Supp. 2d at 452; *Curran*, 2008 U.S. Dist. LEXIS 12470 at *32-34, *41; *Doctor's Assoc., Inc.*, 2007 U.S. Dist. LEXIS 28811 at *6, n.3.

### B.      DAI's Complaint Is Not limited To Statements Obtained From Websites.

The Defendants contend that DAI's claims "rest entirely upon a SuperMedia employee's forwarding of an email containing links to public, interactive computer service websites." (Defs.' Memo at 9.) This is not accurate. Paragraph 34 of the Complaint reads: "Upon information and belief, SuperMedia has provided and continues to provide the SuperMedia Email and/or the RipOffReport Posts and/or the Scam Informer Post and/or other defamatory information concerning DAI to DAI's potential customers." (Compl. ¶ 39 (emphasis added).) This allegation includes any verbal or written statements that any of the Defendants made to DAI's potential customers.

The SuperMedia Email shows that the Defendants, and possibly other SuperMedia employees, had conversations with third parties about DAI, in addition to sending them defamatory information from websites. (Ex. A.) Caro references a conversation that he had about DAI with his client, Ingram Auto Parts. (*Id.*) Sapaugh's email statements encourage SuperMedia employees to "be aware" and "don't let this happen" – meaning don't let DAI convince your customers to spend less. (*Id.*) While Duffy forwarded the SuperMedia Email without comment, it is reasonable to infer that he followed up with a conversation. And, it is reasonable to infer that, like Duffy, the rest of Sapaugh's staff followed his direction and had

7

written or verbal communications with their customers about DAI.  The Defendants' motion to dismiss should be denied and DAI should be entitled to discovery in these circumstances.

## II.   DAI HAS PROPERLY ALLEGED DEFAMATION UNDER VIRGINIA LAW.

"To establish a defamation claim under Virginia law, the plaintiff must show '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Soo Choi v. Kyu Chul Lee*, 312 Fed. Appx. 551, 552 (4th Cir. 2009).  DAI's complaint alleges all of these elements.

### A.   The Defendants Published Defamatory Statements About DAI to Third Parties.

To satisfy the publication element, "a statement must be communicated to a person other than the injured party, so that it is heard and understood – to refer to the injured party – by that person." *Cretella v. Kuzminski*, No. 3:08-CV-109, 2008 U.S. Dist. LEXIS 42152, *9 (E.D. Va. May 29, 2008) (citing *Food Lion, Inc. v. Melton*, 250 Va. 144, 458 S.E.2d 580, 584-85 (Va. 1995); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004).  A person who republishes defamatory statements is subject to liability just as if he had published them originally.  *See Cianci v. New Times Publishing Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980); *Jones v. Taibbi*, 400 Mass. 786, 796, 512 N.E.2d 260, 264-65 (Mass. 1987); 3 Restatement (Second) Torts § 578 (1977).  "The law affords no protection to those who couch their libel in the form of reports or repetition." *Cianci*, 639 F.2d at 61.

Emailing links to defamatory websites constitutes publication of those defamatory statements. *See Wallace v. Perry (In re Perry)*, 423 B.R. 215, 269-70 (Bankr. S.D. Tex. 2010). In *Perry*, the defendant sent an email with links to websites with blatant falsities about the business practices of the mayor of a Texas town.  *Id.*  The defendant did not comment on the content of the websites or add any additional defamatory statements.  *Id.*  The court stated that the publication element is satisfied when "the statement was published in such a way that the

third parties are capable of understanding its defamatory nature." *Id.* at 266-67.  The court held

that "an email, just like a letter or a note, is a means for a statement to be published so that third

parties are capable of understanding the defamatory nature of the statements" and hence, "an e-

mail sent to third parties constitutes publication for defamation purposes." *Id.* at 267.

Here, like *Perry*, DAI alleges that the Defendants sent emails to third parties with links to

a website that included defamatory statements about DAI.  Taking the Complaint's allegations as

true, Duffy sent an e-mail to a prospective DAI customer containing links to the RipOffReport

posts, the Scam Informer Posts, and a link to a blog that contained defamatory statements about

DAI. (Compl. ¶ 29.)  The prospective customer received and read the SuperMedia Email and

after doing so, refused to do business with DAI.  (*Id.* at ¶¶ 29-30.)  These facts satisfy the

publication element.  *See Cretella*, 2008 U.S. Dist. LEXIS 42152 at *9.

In addition, DAI's complaint is not limited to the SuperMedia Email.  Paragraph 34 of

the Complaint reads: "Upon information and belief, SuperMedia has provided and continues to

provide the SuperMedia Email and/or the RipOffReport Posts and/or the Scam Informer Post

and/or other defamatory information concerning DAI to DAI's potential customers." (Compl. ¶

34 (emphasis added).)  This allegation includes any verbal or written statements that any of the

Defendants made to DAI's potential customers.[4]

The SuperMedia Email shows that the Defendants, and possibly other SuperMedia

employees, had conversations with third parties about DAI, in addition to sending them

---

[4] DAI's complaint does not have to identify all of the third parties to whom the Defendants published the defamatory statements. *See Harrington v. Sprint Nextel Corp.*, No. 1:08cv336 (JCC), 2008 U.S. Dist. LEXIS 42071, *16 (E.D. Va. May 29, 2008) (noting that "[f]ailure to specifically identify the third parties is not fatal to Plaintiffs' claim [of defamation].") "Under Virginia law, 'details such as the time and place of the alleged communication, the name of a defendant's agent, and the names of the individuals to whom the defamatory statement was purportedly communicated can be provided in a bill of particulars if not included in a plaintiff's pleading." *Id.*

defamatory information from websites. (Ex. A.) Caro references a conversation that he had about DAI with his client, Ingram Auto Parts. (*Id.*) Sapaugh's email statements encourage SuperMedia employees to "be aware" and "don't let this happen" – meaning don't let DAI convince your customers to spend less. (*Id.*) While Duffy forwarded the SuperMedia Email without comment, it is reasonable to infer that he followed up with a conversation. And, it is reasonable to infer that, like Duffy, the rest of Sapaugh's staff followed his direction and had written or verbal communications with their customers about DAI. These circumstances satisfy the publication element.

### B.   Defendants' Qualified Privilege Defense is Premature.

Defendants contend that a qualified intra-corporate privilege protects them from liability for publishing defamatory statements within SuperMedia. (Defs.' Mem. at 10-11.) This claim is based solely on the allegation that Sapaugh sent the SuperMedia Email to 12 SuperMedia employees. (*Id.*) This defense is not a basis for dismissal under Rule 12(b)(6). *See Cretella v. Kuzminski*, 2008 U.S. Dist. LEXIS 42152 at *28 (holding that "whether a defendant in a defamation action is protected by a privilege is not a matter to be resolved in the context of a motion to dismiss" and declining to address argument raised on motion to dismiss); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (ruling that a motion to dismiss "does not resolve . . . the applicability of defenses"); *Verrinder v. Rite Aid Corp.*, No. 3:06-CV-00024, 2006 U.S. Dist. LEXIS 53385 (W.D. Va. Aug. 2, 2006) (ruling that an adequately pled claim of defamation may survive a motion to dismiss, even if a qualified privilege exists). In addition, the Complaint alleges several other allegations that satisfy the publication element. A conclusory allegation of a qualified privilege is not a basis to dismiss DAI's defamation claim.

Even if a qualified privilege existed, that privilege is lost if the Defendants published the defamatory statements with malice. *See Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134-

35, 575 S.E.2d 858, 863 (Va. 2003).  "Common-law malice, in the context of defamation, is defined as 'some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference or recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff.'"  *Andrews v. Va. Union Univ.*, No. 3:07cv447, 2007 U.S. Dist. LEXIS 85273, *30 (E.D. Va. Nov. 16, 2007).  Whether the defendant "was actuated by malice, and has abused the occasion and exceeded his privilege are questions of fact for the jury." *D'Alfio v. Theuer*, 81 Va. Cir. 237, 239 (Va. Cir. Ct. 2010).

Here, DAI alleged that the Defendants published the defamatory statements about DAI to injure DAI's reputation and its financial interests.  Specifically, DAI alleged that the Defendants "published false and defamatory statements concerning DAI to DAI's potential customers in an effort to maintain or increase their financial interests by preventing advertisers from hiring DAI to help reduce the amount of money the advertisers spend in yellow page advertising." (Compl. ¶ 39.)  Whether the Defendants acted with malice and lost any privilege that they claim exists is a question of fact and not amenable to dismissal at this stage.

**C.**     **The Defendants' Published Defamatory Statements.**

The Defendants contend that DAI has not alleged any actionable statements in its defamation claim.  (Defs.' Memo at 12.)  Specifically, the Defendants claim that the content of the SuperMedia Email is not defamatory and that the RipOffReport and Scam Informer posts are merely opinion.  (*Id.*)

"An actionable statement is one that is both false and defamatory." *Soo Choi*, 312 Fed. Appx. at 552.[5] It is a statement that "tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993); *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 608-09 (E.D. Va. 2005). Statements that impugn a person's integrity in their business or profession or prejudice a person in their business or profession are defamatory *per se*. *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1070-71 (4th Cir. 1993) (citing *Fleming v. Moore*, 221 Va. 884, 275 S.E.2d 632 (1981)). A corporation may be defamed *per se* by statements "which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." *General Products Co., Inc. v. Meredith Corp.*, 526 F. Supp. 546, 549-50 (E.D. Va. 1981).

"[T]o render words defamatory and actionable it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954). "Accordingly, [the United States Court of Appeals for the Fourth Circuit] ha[s] stated that courts applying Virginia defamation law should consider not only the words themselves but also the inferences fairly attributable to them." *Hatfill v. New York Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005).

### 1.   The RipOffReport and Scam Informer posts include defamatory statements.

The Defendants claim that the RipOffReport and Scam Informer posts are not defamatory because they include only opinions of disgruntled DAI customers. (Defs.' Memo at 12.) To

---

[5] "On a motion to dismiss a defamation claim, a court must credit plaintiff's allegations that the statements were factually false, and focus instead on whether the alleged statements could support a finding that they are actionable." *E.g.*, *Echtenkamp v. Loudon County Pub. Schs*, 263 F. Supp. 2d 1043, 1063 (E.D. Va. 2003) (citation omitted).

support this broad claim, the Defendants identify one statement: ". . . in my opinion, this is a scam that could cost $40,000!" (*Id.*) Merely including the words "in my opinion" does not make a defamatory statement an unactionable opinion. *See Hatfill*, 416 F.3d at 333 (4th Cir. 2005); *Swengler*, 993 F.2d at 1071. In addition, the RipOffReport posts and the Scam Informer posts are littered with other defamatory statements that impugn DAI's integrity and prejudice it in its business.

A defamatory statement is a statement of fact that can be objectively characterized as true or false. *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005). A statement containing a "provably false factual connotation" or a statement that can "reasonably be interpreted as stating actual facts about a person" is actionable. *Fuste*, 265 Va. at 132-33, 575 S.E.2d at 861. "In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47, 670 S.E.2d 746, 750 (Va. 2009). "Rather, a court must consider the statement as a whole, including any implications, inferences, or insinuations that reasonably could be drawn from each statement." *Id.* at 48.

The RipOffReport and Scam Informer posts that the Defendants sent to DAI's prospective customers include several defamatory statements. Examples of defamatory statements include:

- "Directory Assistants, Inc.. 'Michael Cody' 'A Yellow Page Consultant Scam Artist' They provide no real service at a very high cost and court cases..." (Compl. ¶ 19.)

- "Business to business scam that can cost $$$Thousands. They give no real advise and will not help negotiate with AT&T Reps like they said they would." (Compl. ¶ 19.)

- "Do not sign a contract with this company. Once you sign the contract you are not a customer, but a victim of their contract. They won't help you lower your ad

costs. They will only tell you to reduce the size of your ad and when you do or make any changes at all they will charge you exhorbitant [sic] fees. ... Their contract is full of deceptive devices that work in their favor." (Compl. ¶¶ 22, 27.)

These posts state that DAI is a scam and its vice president is a scam artist. They state that DAI does not give any real advice, does not do what they promise to do, and that DAI's contract is deceptive. These statements convey that DAI is dishonest, deceitful, and not a legitimate business. These statements impugn DAI's integrity and prejudice DAI in its business. They are actionable defamatory statements. *Swengler*, 993 F.2d at 1070-71.

### 2. The SuperMedia Email includes defamatory statements.

The Defendants claim that DAI's defamation claim should be dismissed because the SuperMedia Email does not include any defamatory statements that they made. (Defs.' Memo at 12-13.) They contend that the email merely republishes statements of a third party. (*Id.*) Republishing defamatory statements, however, subjects the Defendants to liability. *See Cianci,* 639 F.2d at 60-61; *Perry*, 423 B.R. at 769-70. Moreover, the SuperMedia email includes defamatory statements that the Defendants' authored and creates inferences of other defamatory statements.

In the SuperMedia Email, Sapaugh commented on and endorsed Caro's email compiling the defamatory information. (Ex. A.) Sapaugh wrote "[A]ll they do is hurt the client. We do anything the client wants and we don't charge for it- we sell on value, not fear!" (Compl. ¶ 32.) These statements imply that DAI scares people into doing business with them, that DAI's services harm their customers, and that DAI's services are not what DAI advertises. Such statements and inferences impugn DAI's integrity and prejudice DAI in its business. They are actionable defamatory statements. *Swengler*, 993 F.2d at 1070-71.

Caro started the SuperMedia Email when he compiled the links to the RipOffReport

Posts and Scam Informer Post. (Ex. A.) He stated in his email that: "The company is called Directory Assistant, Inc. Below are links to their website and several scam and legal reports." (*Id.*) He also provided a link to an online blog "complaining about [DAI]," which Caro said had "some obviously fake posts that are positive." (Ex. A; Compl. ¶ 31.) The stated and implied import of Caro's statements is that DAI is dishonest, a scam, and not a legitimate business. This becomes even more apparent when the statements are read in context with the defamatory information in the RipOffReport Posts and the Scam Informer Post. *See Hatfill*, 416 F.3d at 330-33 (holding that plaintiff's complaint adequately alleged that columns, taken together, were capable of defamatory meaning); *In re Perry*, 423 B.R. at *269-71 & 269 ns. 40, 41 (finding e-mail that forwarded links to blog defamatory based on content in blog). Caro's statements are actionable defamatory statements.

### 3.   DAI's complaint alleges other actionable statements.

DAI's complaint is not limited to the SuperMedia Email. Paragraph 34 of the Complaint reads: "Upon information and belief, SuperMedia has provided and continues to provide the SuperMedia Email and/or the Rip Off Report Posts and/or the Scam Informer Post and/or <u>other defamatory information concerning DAI to DAI's potential customers.</u>" (Compl. ¶ 34 (emphasis added).) This allegation includes any verbal or written statements that any of the Defendants made to DAI's potential customers.

The SuperMedia Email shows that the Defendants, and possibly other SuperMedia employees, had conversations with third parties about DAI, in addition to sending them defamatory information from websites. (Ex. A.) Caro references a conversation that he had about DAI with his client, Ingram Auto Parts. (*Id.*) Sapaugh's email statements encourage SuperMedia employees to "be aware" and "don't let this happen" – meaning don't let DAI

convince your customers to spend less. (*Id.*) While Duffy forwarded the SuperMedia Email without comment, it is reasonable to infer that he followed up with a conversation. And, it is reasonable to infer that, like Duffy, the rest of Sapaugh's staff followed his direction and had written or verbal communications with their customers about DAI. These allegations and reasonable inferences satisfy the requirement of alleging an actionable statement.

### D.    DAI Pled the Requisite Intent. .

The requisite intent element requires that "the defendant either knew [the statement] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713, 725 (Va. 1985); *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (Va. 2009); *Andrews v. Va. Union Univ.*, No. 3:07cv447, 2007 U.S. Dist. LEXIS 85273, *26 (E.D. Va. Nov. 16, 2007). Fed. R. Civ. P. 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be pled generally." This standard applies to the intent element of a defamation claim. *See Cretella*, 2008 U.S. Dist. LEXIS 42152 at *27-28. DAI's Complaint meets this standard.

Caro compiled statements from the websites Rip Off Report and Scam Informer. (Ex. A; Compl. ¶ 31.) These statements call DAI a scam, call its officers and employees scam artists, and imply that DAI is deceitful and dishonest. (Compl. ¶¶ 19-28.) Caro's email insinuates that DAI is a scam – and even characterizes positive reviews about DAI on one website as "obviously fake." (Ex. A.) Sapaugh's email endorses Caro's emails and the defamatory statements that it includes. (*Id.*) The Defendants sent these statements and possibly others to DAI's potential customers to advance their own interests and to harm DAI. (Compl. ¶¶ 34, 39.) These allegations and the inferences drawn therefrom show that the Defendants knew that the

statements were false, or if they believed they were true, they lacked reasonable grounds for such belief, or they acted negligently in failing to ascertain the facts on which the defamatory statements were made. Viewed in DAI's favor, these facts show that DAI could satisfy its burden of proof on this element. *Cretella*, 2008 U.S. Dist. LEXIS 42152 at *27-28. The Defendants' motion should be denied.

## III. DAI HAS PROPERLY ALLEGED TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY CLAIMS.

In Virginia, tortious interference with a contract or business expectancy requires proof of five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted; and (5) a competitive relationship between the party interfered with and the interferor. *See 17th Street Assocs., LLP, Plaintiff, v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005). The Defendants claim that DAI did not sufficiently allege (1) that Defendants used improper methods; (2) the existence of a valid business expectancy; and (3) Defendants' knowledge of a business expectancy. (Defs.' Mem. at 14-17.) The Complaint shows otherwise.

### A. The Defendants' Publication Of Defamatory Statements About DAI Satisfies The Improper Methods Element.

"Methods of interference considered improper are those means that are illegal or independently tortious . . . ." *Duggin v. Adams*, 234 Va. 221, 227, 360 S.E.2d 832, 836 (Va. 1987). "Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, ***defamation***, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* (emphasis added) "Methods also may be improper because they violate an established standard of a trade or

17

profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods." *Id.*

As set forth above, DAI has pled actionable defamation claims against the Defendants. This satisfies the improper methods element of a tortious interference claim. *See Duggin*, 234 Va. at 227, 360 S.E.2d at 836.

### B.   The Defendants Made Defamatory Statements To DAI's Prospective Customers.

"[B]usiness expectancy is still merely an expectancy. It need not be absolutely guaranteed." *Signature Flight Support Corp. v. Landow Aviation L.P.*, No. 1:08cv955 (JCC), 2009 U.S. Dist. LEXIS 1938, *7 (E.D. Va. Jan. 13, 2009); *see Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 336-37 (E.D. Va. 2007) *see also Wuchenich v. Shenandoah Mem. Hosp.*, 215 F.3d 1324 (4th Cir. 2000) (unpublished), *full op. at* No. 99-1273, 2000 U.S. App. LEXIS 11557, *56.

The Defendants claim that "DAI only alleges the bald conclusion that Defendants published defamatory statements about DAI to third parties, one of which ***may have been*** a 'potential' or 'prospective' customer." (Defs.' Memo at 15 (emphasis added).) That is not what Complaint alleges.   The Complaint actually alleges that one of the Defendants sent the SuperMedia Email to a prospective customer – not someone who may have been a prospective customer. (Compl. ¶ 33 ("Duffy sent the SuperMedia Email, including the Rip Off Report Posts and the Scam Informer Post, to a prospective customer of DAI on May 10, 2011.").)   The SuperMedia Email shows that Caro's customer contacted him after talking to DAI and asked Caro how much money she could save by making a change to their yellow pages ad. (Ex. A.) This was obviously someone who DAI – a company that helps people save money on their yellow page ads – spoke with and viewed as a potential customer.   The Complaint also alleges

that DAI has done business with and expects to continue to do business with customers located in Virginia and that the Defendants sent the SuperMedia Email and/or other defamatory information concerning DAI to DAI's potential customers.   (Compl. ¶¶ 34, 36.)   These allegations, which must be accepted as true for purposes of this motion, show that DAI had and has both customers and potential customers in Virginia and that DAI intends to continue to do business in Virginia.  This satisfies the business expectancy element.

### C.   The Defendants Knew That DAI Did Business In Virginia.

The Defendants claim that DAI's allegation that the Defendants knew that DAI did business in Virginia is insufficient under *Iqbal* and *Twombly*. (Defs.' Mem. at 16.)  They do not provide any authority for this claim.  And, they overlook the excerpt from the SuperMedia Email, included in Paragraph 32 of the Complaint, which quotes SuperMedia's District Sales Manager, Sapaugh: "Teams – we heard about these guys, they've been here before and all they do is hurt the client." Sapaugh tells his staff "don't let this happen."  This shows that the Defendants knew that DAI did business in Virginia.

DAI has sufficiently pled its tortious interference claim.  The Defendants' motion should be denied.

## IV.   INJUNCTIVE RELIEF.

The permanent loss of customers to a competitor, damage to reputation, or the loss of goodwill constitutes irreparable harm and warrants injunctive relief. *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126-27 (4th Cir. 2011) (affirming trial court's finding of irreparable harm and issuance of permanent injunction where, *inter alia*, company suffered and potentially continued to suffer substantial harm to its reputation and goodwill); *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 881-82 (E.D. Va. 2011). DAI has alleged that the Defendants' tortious conduct has damaged their reputation and caused it

to lose customers. (Compl. ¶¶ 40, 44.) These allegations and the rest of the complaint supports a claim for a permanent injunctions.

## CONCLUSION

The Defendants sent statements calling DAI a "scam" and its employees "scam artists" to DAI's prospective customers. These statements insinuate that DAI is dishonest and deceitful and not a legitimate business. The Defendants had conversations about these statements and about DAI with at least two of DAI's prospective customers and possibly many more. The Defendants did this to try to dissuade those customers from doing business with DAI. DAI has alleged more than enough facts and information to allow this case to proceed to discovery. The Defendants' motion to dismiss should be denied.

**DIRECTORY ASSISTANTS, INC.**

_____/s/_____
John B. Mumford, Jr. (VSB No.: 38764)
Kathryn E. Kransdorf (VSB No.: 74124)
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Telephone: (804) 967-9604
Facsimile: (804) 967-2411
jmumford@hdjn.com
kkransdorf@hdjn.com
_Counsel for Directory Assistants, Inc._

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2011, the foregoing document was electronically filed using the Court's CM/ECF system causing a notice of electronic filing to be sent to the following:

Robert W. McFarland, Esquire
Erin Q. Ashcroft, Esquire
McGuireWoods LLP
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
*Counsel for Defendants*

/s/
John B. Mumford, Jr. (VSB No.: 38764)
Kathryn E. Kransdorf (VSB No.: 74124)
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Telephone: (804) 967-9604
Facsimile: (804) 967-2411
jmumford@hdjn.com
kkransdorf@hdjn.com

*Counsel for Directory Assistants, Inc.*