**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| DIRECTORY ASSISTANTS, INC., *Plaintiff*, v. SUPERMEDIA LLC, *et al.*, *Defendants.* | Case No. 2:11-cv-480 |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants SuperMedia LLC ("SuperMedia"), Alejandro Caro ("Caro"), Steven Sapaugh ("Sapaugh"), and Scott E. Duffy ("Duffy") (collectively, "Defendants") by counsel, hereby submit this Reply brief in support of their Motion to Dismiss Plaintiff's Complaint.

INTRODUCTION

DAI's Opposition fails to fail to nudge its claims against Defendants "across the line from conceivable to plausible," and instead, without sufficient factual allegations, seeks to delay the obvious finding that Defendants' sending of the email at issue in this lawsuit (the "Email") was protected by the Communications Decency Act (the "CDA"). DAI's Complaint should thus be dismissed in its entirety, as its claims against Defendants are barred by the CDA, and otherwise fail to state a claim for relief under the heightened pleading standards of *Iqbal* and *Twombly*.

ARGUMENT

I. Plaintiff's Complaint is Barred by the Communications Decency Act

    A. Plaintiff is Not Entitled to Discovery when its Allegations are Insufficient.

DAI's Opposition does not dispute that the CDA provides immunity to users and providers of interactive computer services. Rather, DAI argues that dismissal at the 12(b)(6) stage is improper, because discovery needs to be conducted in order to establish that the website links contained in the Email are interactive computer services, and not information content providers. Opp'n at pp. 6 – 7. Despite DAI's assertions to the contrary, a CDA immunity defense is amenable to a ruling on a 12(b)(6) Motion. S*ee, e.g. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1023 (D. Idaho 2010) (finding CDA immunity and granting defendant's motion to dismiss as to all statements attributed to others posted on defendant's website); *Gibson v. Craigslist, Inc.*, 2009 U.S. Dist. LEXIS 53246 (S.D.N.Y. June 15, 2009) (dismissing plaintiff's claim as barred by the CDA, and noting that some court have held that it is proper to evaluate a Section 230 immunity defense "in the context of a 12(b)(6) motion" where the necessary facts are apparent on the face of the complaint and the immunity available under the CDA precludes a plaintiff from stating a claim.); *Doe v. Bates,* No. 05 Civ. 91, 2006 U.S. Dist. LEXIS 93348, 2006 WL 3813758, at *9-10 (E.D. Tex. Dec. 27, 2006); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008)(dismissing claim against operators of www.ripoffreport.com for failure to state a claim that could survive CDA immunity).

The Fourth Circuit has recognized that granting a 12(b)(6) motion on the grounds of CDA immunity is appropriate.  For example, in *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* the Fourth Circuit affirmed the district court's dismissal of plaintiff's complaint pursuant to Rule 12(b)(6).  591 F.3d at 260.  The plaintiff in *Nemet* made the same argument as DAI: namely, that it was entitled to discovery before a ruling could be made on CDA immunity.  *Id*. at 253.  The district court disagreed with the plaintiff, and instead found that in order to avoid the broad immunity granted by the CDA, the complaint must plead facts that show that the website was an information content provider.  *Id*. at 260.  The district court dismissed the complaint, and the Fourth Circuit affirmed the dismissal, on the grounds that "the allegations contained in the Amended Complaint [d]o not sufficiently set forth a claim asserting that [Consumeraffairs.com] authored the content at issue. Furthermore, the allegations are insufficient to take this matter outside of the protection of the Communications Decency Act." *Id*. at 253.

Here, DAI's own allegations establish that the websites at issue are interactive computer services.  According to DAI's Complaint, the Scam Reporter, RipOffReport, and "blog" websites are websites that allow multiple anonymous posters to provide information.  Compl. ¶¶ 20, 21, 22, 27.  Such websites are considered interactive computer services under the CDA, which broadly provides immunity to users of "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 USCS § 230(f)(2).  Indeed, other courts have determined that the CDA provides immunity to one of the exact websites at issue, www.ripoffreport.com, as well as their users.  *Global Royalties, Ltd. v. Xcentric Ventures,*

3

*LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) (granting defendant's motion to dismiss plaintiff's amended complaint on the grounds that plaintiff failed to allege facts sufficient to establish www.ripoffreport.com as an information content provider); *see also Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 U.S. Dist. LEXIS 11632 (M.D. Fla. Feb. 15, 2008) (same).

Courts that have dismissed claims against the Rip Off Report website have required the plaintiff to plead specific facts for avoiding CDA immunity, rather than requiring the defendant to wait until discovery is undertaken to prove the CDA applies. These courts have dismissed complaints due to a plaintiff's failure allege facts sufficient to show that a particular website is an information content provider, rather than an interactive computer service. Here, DAI has not alleged a single fact to support a finding that the websites contained in the Email are information content providers, or that the users of these websites are not otherwise entitled to the CDA's protection. Indeed, in their Opposition, DAI does not even entertain the notion that these websites are, in fact, information content providers. Rather, DAI incorrectly asserts that discovery is necessary in order to prove their status as interactive computer services. To the contrary, as DAI has failed to allege that the websites contained in the Email are actually information content providers, and that Defendants are not entitled to CDA immunity, dismissal at the 12(b)(6) stage is appropriate.

Moreover, Plaintiff's own allegations establish Defendants as "users" of the interactive computer services detailed in the Email, not information content providers, such that no additional discovery is necessary. Plaintiff's only allegation of wrongdoing on

behalf of Defendants is that after initial internal communications, Defendants forwarded the Email containing links to certain websites on which other users made posts. Compl ¶ 29, 31-32. There is no allegation that Defendants themselves created these posts, or otherwise altered or contributed to the posts. *See generally*, Compl. Rather, they Defendants are merely alleged to have "complied the links" to certain websites, and forwarded these links within the company, and to one other individual. Compl. ¶ 31-32. These allegations alone are sufficient to establish Defendants as "users" of an interactive computer services.

DAI cites to *Wallace v. Perry (In re Perry)*, 423 B.R. 215, 269-70 (Bankr. S.D. Tex. 2010) to support its contention that emailing links to defamatory websites can constitute publication of those defamatory statements. Plaintiff's reliance on *Perry* is, however, misplaced. First, *Perry* is not binding precedent on this Court. Moreover, the parties in *Perry* never raised the defense of immunity under the CDA, and the Court therefore did not consider it. In *Perry*, the issue before the bankruptcy court was whether the debt of a debtor could be deemed non-dischargeable, in light of the alleged wrongdoing surrounding the failure of a business venture. Part of the wrongdoing at issue involved the circulation of links to an online blog that contained defamatory postings. *Id*. at 270. The bankruptcy court, in determining that the circulation of this information constituted defamation, did not take into consideration the immunity provided by the CDA for this type of online blog posting. *See generally*, 423 B.R. 215. The debtor failed to raise the CDA as a defense and, accordingly, the Court did not address the CDA's impact. *Id*.

In contrast to the ruling in *Perry*, once the CDA has been raised as a defense to the republication of an allegedly defamatory website or blog, the CDA provides immunity from common law defamation claims for persons who republish the work of other persons through internet-based methodologies, such as websites, blogs, and email. *See, e.g., Mitan v. A. Neumann & Assocs.*, LLC, 2010 U.S. Dist. LEXIS 121568, 17-18 (D.N.J. Nov. 17, 2010); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 51 Cal. Rptr. 3d 55, 146 P.3d 510, 513 (Cal. 2006) (holding that CDA immunity extended to individuals who republish via the Internet defamatory statements originally made by others in email and internet postings); *Novins v. Cannon*, Civ. No. 09-5354, 2010 U.S. Dist. LEXIS 41147, 2010 WL 1688695, at *2-3 (D.N.J. Apr. 27, 2010) (same).

For example, in the factually similar case of *Mitan v. A. Neumann & Assocs., LLC*, 2010 U.S. Dist. LEXIS 121568, 17-18 (D.N.J. Nov. 17, 2010), the court determined that where a libel claim rested entirely on the act of forwarding the text embedded in an email, the forwarder was considered a user of an interactive computer service under the CDA. Accordingly, the court refused to treat the email forwarder as a publisher or speaker of any information provided by another information content provider. *Id*. There, in light of the plaintiff's own allegations in the complaint, the court deemed the defendants users of an interactive computer service, who could not be held liable for defamation merely for their forwarding of an email containing a link to an internet website. *Id*. The facts set forth in the *Mitan* complaint, and the defenses raised by the defendants there are more akin to the circumstances presently before this Court than those in *Perry*. Likewise, here, Defendants

are users of an interactive computer service, and cannot be held liable for forwarding an email containing a link to allegedly defamatory websites.

  B. <u>DAI's Allegations of "Other Statements" are Insufficient to State a Claim.</u>

  In its Opposition, DAI contends that it was not merely the forwarding of the Email containing the allegedly defamatory websites that constituted defamation, but also other unspecified statements that "any of the Defendants made to DAI's potential customers." Opp'n at p. 7. Assuming, arguendo, that the Complaint contains allegations of certain "other" verbal statements or written communications that could provide an independent basis for DAI's claims, those allegations are insufficient as a matter of law to pass muster under the heightened pleading standard of *Twombly* and *Iqbal*, as these allegations are nothing more than legal conclusions. Plaintiff does not provide any details about them, let alone specify the content of the "other" allegedly defamatory statements. Therefore, they are not entitled to the presumption of truth, because the characterization of these "other statements" allegedly made by Defendants is nothing more than a bald legal conclusion. There are simply no facts alleged that would nudge DAI's claims regarding these other statements from the implausible to the plausible.

  For example, Plaintiff contends that it is "reasonable to infer" that Duffy followed up the email he internally forwarded that maintains SuperMedia's client being contacted by DAI with a conversation with that client. DAI also asks this Court to inter that the rest of Sapaugh's staff followed his direction and had written or verbal communications with their customers. Opp'n at pp. 7-8. But Plaintiff fails to provide a single factual allegation to support this requested inference. Indeed, what plaintiff really asks the Court to do is make

7

an inference by assuming facts that have not even been alleged. There can be, though, no reasonable inference of other allegedly defamatory conversations or emails without DAI providing factual allegations stating what the defamatory statements were, when they occurred, or who they occurred between. As there are no allegations or documents to support the requested inference, it is equally, if not more probable, that no such third party communications occurred. Accordingly, any requested "inference" of defamation outside of the email set forth in Exhibit A of Plaintiff's Opposition should be disregarded. Such inferences cannot be made and the claims do not survive this 12(b)(6) motion.

It bears noting that the original predicate from which the inferences are requested to be drawn is itself pleaded "upon information and belief." Compl. ¶39. But DAI pleads no actual facts to support its conclusory citation that Super Media has provided the Email or the publicly posted information to third parties, or what "other defamatory information" it is continuing to provide. This Court should disregard these legal conclusions regarding unspecified other defamatory statements, made upon information and belief, and limit its analysis solely to the Email set forth in the Complaint. Examination of the Email at issue indicates that as a matter of law, Defendants are entitled to immunity under the CDA, and the Complaint should be dismissed in its entirety.

II.     The Complaint Fails to Plead the Elements of Defamation.

    A.     The Content Contained on the Websites is Not Actionable.

As explained above, and in Defendants' Motion to Dismiss, Defendants cannot be considered publishers of any content posted on the website links contained in the Email, because the CDA provides complete immunity to users of interactive computer services.

8

In addition to this statutory immunity, the content contained in the links themselves is, as a matter of law, not defamatory, as the postings are nothing more than the opinions of anonymous posters, and internal statements that are not provable assertions of fact and were forwarded as a whole to one third person.

While generally, "online speech stands on the same footing as other speech," *In re Anonymous Online Speakers*, No. 09-71265, 2011 U.S. App. LEXIS 487, 2011 WL 61635, at *2 (9th Cir. Jan. 7, 2011), blogs and public forum websites are a subspecies of online speech which inherently suggest that statements made there are not likely provable assertions of fact. *See e.g., Obsidian Fin. Group, LLC v. Cox*, 2011 U.S. Dist. LEXIS 94355, 6-8 (D. Or. Aug. 23, 2011) (observing that blogs are distinct from other forms of online speech); *Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 63507, 2011 WL 2441898, at *18 (statements made on obviously critical blog with "heated" discussion and criticism less likely to be viewed as assertions of fact); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (statements made on personal website and through online discussion groups as part of heated debate less likely to be seen as assertions of fact); *see also Too Much Media, LLC v. Hale*, 206 N.J. 209, 234-35, 20 A.3d 364, 378-79 (2011) (noting that "online message boards provide virtual, public forums for people to communicate with each other about topics of interest" and "promote a looser, more relaxed communication style") (internal quotation and brackets omitted); *Sandals Resorts Int'l, Ltd v. Google, Inc.*, 925 N.Y.S.2d 407, 415-16, 86 A.D.3d 32, 43-44 (N.Y. App. Div. 2011) (noting that the "low barrier to speaking online allows anyone with an Internet connection to publish his thoughts, free from the editorial constraints that serve as gatekeepers for

most traditional media of disseminating information [] [o]ften result[ing] in speech characterized by grammatical and spelling errors, the use of slang, and, in many instances, an overall lack of coherence;" observing that readers give less deference to allegedly defamatory remarks published on online message boards, chat rooms, and blogs, than to similar remarks made in other contexts) (internal quotation omitted).

The website links contained in the Email contain the same sort of "heated debates" that do not lend themselves to a finding of actionable statements, because these websites are nothing more than forums that allow the general public to air their views, and provide opinions about their individual experiences with companies. The alleged postings are made on "obviously critical" blogs and forums, and in that context, are less likely to be viewed as assertions of fact rather than opinions. *See Nicosia*, 72 F. Supp. 2d 1093, 1101. Accordingly, the information posted on these websites, none of which were allegedly authored by the defendants, cannot be considered defamatory, and the forwarding of a link to the websites likewise cannot be considered the publishing of a defamatory statement.

  B. <u>The Remaining Content in the Email is Not Defamatory.</u>

DAI argues that two additional statements made by Defendants also constitute defamation: (1) Sapaugh's comment that "all they do is hurt the client. We do anything the client wants and we don't charge for it – we sell on value, not fear!;" and (2) Caro's comment that "The company is called Directory Assistant, Inc. Below are links to their website and several scam and legal reports…complaining about Directory Assistants Inc…[and containing] some obviously fake posts that are positive." Opp'n at p 15. As a matter of law, however, these two statements are not defamatory. In addition to the fact

10

that as internal statements they enjoy a privilege, they are expressions of opinion ("all they do is hurt the client."; "we sell on value not fear.") or provisions of information ("below are links . . . "). Moreover, DAI has failed to allege the requisite intent of Caro and/or Sapaugh as to these internal communications.

DAI argues that the "allegations and inferences" drawn from Defendants' allegedly compiling website links, insinuating that DAI is a scam, and sending statements to potential customers, show that Defendants knew or should have known that the statements were false. Opp'n at p. 16. But the content of the Email itself is to the contrary. The Email reflects that, based on what they had heard about DAI from others and from independent internet research, Defendants had actual and reasonable concerns about DAI, as expressed in the statements in the websites and Email. *See* Ex. A. Even accepting Plaintiff's allegations as true, the inferences drawn from Defendants' alleged actions cannot support the element of requisite intent. Moreover, the two statements contained in the Email are not "provable assertions of fact," as they are nothing more than the opinions of Sapaugh and Caro, in light of their independent experiences with DAI. Accordingly, Sapaugh and Caro's two additional statements contained in the email are not actionable statements, and cannot save the Complaint.

    C.    <u>The Email is Entitled to Qualified Privilege</u>

DAI also contends that qualified immunity is not a basis for dismissal under Rule 12(b)(6), and that any qualified intra-corporate privilege was lost because the Defendants published the allegedly defamatory statements with malice. Opp'n. at p. 10. DAI, however, fails to point to a single factual allegation in its Complaint that would support a

11

finding of malice. Indeed, DAI cites only to the allegation that Defendants sent the email "in an effort to maintain or increase their financial interests by preventing advertisers from hiring DAI…" *Id*. at 11. Even accepting those allegations as true, that statement does not constitute an allegations of Defendants' "sinister or corrupt motive" necessary to extinguish the intra-corporate immunity that insulates the allegedly defamatory email circulated within SuperMedia. Accordingly, as there are no allegations of the type of malicious intent necessary to extinguish the qualified privilege protecting an internally circulated company email, dismissal of the Complaint is appropriate at the 12(b)(6) stage.

III. <u>DAI has Failed to Adequately Plead a Tortious Interference Claim</u>.

The irony of DAI's tortious interference claim is even more apparent now that DAI has filed its Opposition and the Email is part of the record. The text of the Email itself shows that it was, in fact, DAI's interference with SuperMedia's existing customer that precipitated the allegedly tortious Email. According to the Email, SuperMedia's client, Ingram Auto Parts, was contacted by a "cutter," (DAI) in an attempt to reduce SuperMedia's advertising programs with the customer. *See* Ex. A; Opp'n at p. 18. When the client informed Caro that it was DAI who had contacted her, he investigated on the internet, found the reports and blogs at issue in this lawsuit, and forwarded them to his co-workers to make them aware who DAI was and that it had attempted to interfere with his existing client. *Id*. As noted above, nothing in Caro's internal email, even when it was forwarded to a different customer, is defamatory or tortious. Indeed, the only reasonable inference that can be gleaned from this email exchange is that DAI is the party in this lawsuit attempting to interfere with an actual business relationship.

It appears DAI's "potential customer" at issue in this case is SuperMedia's customer, Ingram Auto Parts, as Plaintiff's Opposition suggests that its specific "potential customer" was the subject of the Email. According to Plaintiff's Opposition, "[t]he SuperMedia Email shows that Caro's customer contacted him after talking to DAI and asked Caro how much money she could save by making a change to their yellow pages ad. (Ex. A.) This was obviously someone who DAI – a company that helps people save money on their yellow page ads – spoke with and viewed as a potential customer." Opp'n at p. 18.

DAI's ironic attempt to support its tortious interference shows that no reasonable business expectancy existed. The "potential customer" alleged in the Complaint was already a customer of SuperMedia, and there is nothing in the Complaint to suggest that SuperMedia's customer had agreed to contract with DAI. Moreover, DAI has failed to explain how SuperMedia's efforts to keep its own client can constitute tortious interference with a competitor's attempts to interfere with that client. DAI has failed to allege the existence of a valid contractual relationship or business expectancy with any of these potential customers, but has only alleged facts that show SuperMedia's efforts to maintain its own clients and existing arrangements. There is not a single allegation in the Complaint to support a probability of future economic benefit from any "potential clients," and Plaintiff's claims for tortious interference fail as a matter of law.

## CONCLUSION

For the reasons set forth above, and in Defendants' Motion to Dismiss, DAI's Complaint against Defendants SuperMedia LLC, Alejandro Caro, Steven Sapaugh, and

Scott E. Duffy should be dismissed in its entirety, judgment entered for Defendants, and Defendants awarded their costs and fees incurred in its defense of this action.

Respectfully submitted,

SUPERMEDIA LLC,
ALEJANDRO CARO,
STEVEN SAPAUGH and
SCOTT E. DUFFY

By Counsel

/s/
Robert W. McFarland (VSB No. 24021)
Erin Q. Ashcroft (VSB No. 74636)
McGuireWoods LLP
101 W. Main Street, Ste. 9000
Norfolk, VA 23510
Tel: 757/640-3733
Fax: 757/670-3961
eashcroft@mcguirewoods.com

*Attorneys for Defendants.*

**CERTIFICATE OF SERVICE**

      I certify that on October 24, 2011 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

John B. Mumford, Jr.
Kathryn E. Kransdorf
Hancock, Daniel, Johnson & Nagle, P.C.
Glen Allen, Virginia 23060
Tel:    804/967-9604
Fax:   804/967-2411

Frank F. Coulom, Jr.
Brett J Boskiewicz
Robinson & Cole LLP
280 Trumbull Street
Hartford, Connecticut 06103
Tel:    860/275-8200
Fax:   860/275-8299

*Counsel for Plaintiff*

                                                      /s/
                                    Robert W. McFarland (VSB No. 24021)
                                    Erin Q. Ashcroft (VSB No. 74636)
                                    McGuireWoods LLP
                                    101 W. Main Street, Ste. 9000
                                    Norfolk, VA 23510
                                    Tel:    757/640-3733
                                    Fax:   757/670-3961
                                    eashcroft@mcguirewoods.com

                                    *Attorneys for Defendants*

\34279841.1